UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRENT NELSON,

        Plaintiff,

v.

        Case No. 21-cv-0654-bhl

URSA MAJOR CORPORATION,

        Defendant.

## ORDER GRANTING SUMMARY JUDGMENT

On September 7, 2021, *pro se* Plaintiff Trent Nelson filed an amended complaint in which he attempted to sue his former employer for violations of the Family and Medical Leave Act of 1993 (FMLA) and Americans with Disabilities Act of 1990 (ADA). (ECF No. 7.) After the Court granted Nelson leave to file a further amendment to correctly name the entity that actually employed him, Ursa Major Corporation (Ursa), as the proper defendant, (ECF No. 12), Ursa moved for summary judgment. (ECF No. 38.) Ursa's motion was filed more than six months ago, and, despite several extensions, Nelson has not properly responded. Given the lack of a proper response, the Court will accept Ursa's proposed undisputed facts and concludes Ursa is entitled to summary judgment on all claims.

### FACTUAL BACKGROUND[1]

Trent Nelson worked as a truck driver for Ursa from September 25, 2017 until August 21, 2019, when his employment was terminated. (ECF No. 40 ¶¶1–2.) Prior to working for Ursa, Nelson was diagnosed with polyneuropathy and diabetic neuropathy. (*Id.* ¶5.) Due to his condition, Nelson used an accessory knob on the steering wheel to help him perform his job duties. (*Id.*) Nelson's use of this accessory predated his employment with Ursa and he used it without

---

[1] Where possible, these facts are derived from Defendant's statement of proposed facts and accompanying exhibits in support of its motion for summary judgment. (ECF No. 40.) When a party fails to a respond to a motion for summary judgment, the Court accepts the moving party's version of the facts as true. *Terrell v. Am. Drug Stores*, 65 Fed. Appx. 76, 77 (7th Cir. 2003); Civil L. R. 56(b)(4). Additional background is derived from Nelson's complaint as necessary.

issue throughout his employment with Ursa. (*Id.* ¶¶5–7.) Nelson worked up to 65 hours per week for Ursa. (*Id.* ¶3.)

On June 7, 2019, Nelson provided Ursa with a doctor's note indicating he would be unable to work for the next ten days. (*Id.* ¶9.) Ursa responded that same day, giving Nelson a letter outlining his FMLA rights along with FMLA forms for his doctor to complete. (*Id.* ¶10; ECF No. 40-2.) Nelson had his doctor complete the FMLA paperwork and submitted it to Ursa. (ECF No. 40 ¶12.) The doctor recommended that Nelson's work hours be limited to 8 hours per day, 5 days per week (40 hours per week total), from June 14, 2019 through September 15, 2019. (*Id.* ¶13; ECF No. 40-2 at 10.) The paperwork also indicated that Nelson would require intermittent leave due to his condition. (ECF No. 40 ¶14; ECF No. 40-2 at 11.)

From June 7 to August 11, 2019, Nelson took 48 days of unpaid medical leave. (ECF No. 40 ¶17.) He submitted doctor's notes requesting time off on June 7, June 17, and July 1, all of which Ursa approved. (*Id.* ¶16.) Following his return to work on August 12, 2019, Nelson's work hours were reduced to fewer than 40 hours per week, consistent with his doctor's recommendation. He worked approximately 38 hours from August 12 to August 16 and approximately 24 hours the following week before his termination on August 21, 2019. (*Id.* ¶¶20–21.)

When Nelson returned to work following medical leave, he requested a delayed start time for his shifts. (ECF No. 7 ¶¶24–25.) According to Nelson, his manager, Chris Wozniack, verbally agreed to accommodate him by allowing Nelson to begin work between 7:30 and 8:00 a.m., which was roughly 90 minutes later than his previous start time. (*Id.*) Ursa acknowledges that "on or around August 9, 2019 [Nelson] verbally agreed with Chris Wozniack for a delayed start time so that [Nelson] could 'exercise before work.'" (*Id.* ¶23.) Despite being allowed this accommodation, Nelson claims he was "berated by Mr. Wozniack and other [Ursa] employees" on multiple occasions for "being late" or "running late." (*Id.* ¶26.) Nelson alleges he spoke with Wozniack again on August 20 and 21, 2019, and "made it clear that he opposed [Ursa]'s accusations about [Nelson] being late . . . ." (*Id.* ¶¶28, 30.) He also asked Wozniack on both dates to certify the later start time in writing and add it to his FMLA paperwork. (*Id.*) Nelson alleges that Wozniack agreed to formalize his request in writing by the end of the day on August 21, 2019. (*Id.* ¶30.) This documentation became moot, however, as Ursa terminated Nelson's employment that same day. (ECF No. 40 ¶2.)

Unrelated to any timeliness issues, Ursa warned Nelson multiple times about his work performance and conduct. Nelson first received a verbal warning "regarding a trailer incident" and was required to watch a training video following the incident. (*Id.* ¶25.) Later, on May 15, 2019, Ursa issued Nelson a "Suspension/Final Warning" for "causing a collision with another trailer when he was backing his truck in the loading area." (*Id.* ¶¶26, 28.) Nelson was given a three-day suspension for the May 15, 2019 collision. (*Id.* ¶27.) Ursa provided Nelson with a letter memorializing this suspension and warning Nelson that "[a]ny such future violations or problems could result in additional discipline up to and including termination of your employment." (*Id.* ¶28; ECF No. 40-5.) At his deposition, Nelson attempted to recharacterize these incidents but did not dispute receiving the warnings or suspension. (*See* ECF No. 40-1 at 42–49.)

Less than two months later, on or around July 1, 2019, a female dispatcher reported being harassed by Nelson. (ECF No. 40 ¶29.) In a formal complaint, she alleged that Nelson "used slandering comments against her and another female employee," complained that he gets "violently angry," and asserted that he "often mak[es] employees uncomfortable." (*Id.*; ECF No. 40-6.) The same dispatcher lodged two more complaints against Nelson on August 14, 2019. (ECF No. 40 ¶30; ECF No. 40-7.) She alleged that Nelson, on two more occasions, made comments that made her "nervous, scared, and upset" and caused her to cry. (ECF No. 40 ¶30.) Nelson purports not to recall these events and states he was only made aware of the complaints after his termination. (*See* ECF No. 40-1 at 49–52.) But he does not dispute that his female co-employee made the complaints to Ursa. (*See id.*)

Shortly after these final harassment complaints, on August 21, 2019, Ursa terminated Nelson's employment in a telephone call. (*Id.* ¶24.) Ursa also provided Nelson with an "Employee Separation Form," stating that his termination was on "[r]ecommendation of Operations and Safety – Drew Meyers." (ECF No. 40-4.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" if, under the governing law, it could have an effect on the outcome of the lawsuit. *Id.* at 248; *Contreras v. City*

*of Chicago*, 119 F.3d 1286, 1291–92 (7th Cir. 1997). A dispute over a material fact is "genuine" only if a reasonable trier of fact could find in favor of the non-moving party on the evidence presented. *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of proving the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. Upon such a showing, the burden shifts to the opposing party to "make a showing sufficient to establish the existence of an element essential to that party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (quoting *Celotex*, 477 U.S. at 322). This burden is not onerous, but the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

If the parties assert different views of the facts, the Court must view the record in the light most favorable to the non-moving party. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). "Although we construe all facts and make all reasonable inferences in the nonmoving party's favor, the moving party may succeed by showing an absence of evidence to support the non-moving party's claims." *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting *Tyburski v. City of Chicago*, 964 F.3d 590, 597 (7th Cir. 2020)).

While these principles apply to both represented and *pro se* parties, this Court's local rules offer additional safeguards to help ensure unrepresented parties understand the summary judgment process. When a represented party files a motion for summary judgment against a *pro se* litigant, Civil Local Rule 56(a)(1)(A) requires the moving party to include in their motion "a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion." Rule 56(a)(1)(B) also requires the moving party to include in their motion "the text to Fed. R. Civ. P. 56 (c), (d), and (e), Civil L. R. 56(a), Civil L.

R. 56(b), and Civil L. R. 7," which describe the proper procedure and form for responding to a motion for summary judgment, as well as the consequences of failing to do so.

Ursa provided Nelson full notice of the summary judgment process and his response obligations, as required by the local rules. (*See* ECF No. 38 at 1–7.) Despite this notice, and even after multiple extensions from the Court, Nelson has not responded to Ursa's motion. Instead, Nelson has inundated the Court with hundreds of pages of unauthenticated (and inadmissible) documents, copies of text messages, and compact discs with more documents and recordings on them. (*See* ECF Nos. 28–32, 34–36, 44.) While *pro se* litigants "benefit from various procedural protections" not afforded to represented parties (such as the notice requirements described above), they "are not entitled to a general dispensation from the rules of procedure or court imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Under Civil Local Rule 56(b)(2), Nelson was required to file a brief in opposition to Ursa's motion and a response to its proposed statement of facts. His failure to file either document results in this Court accepting Ursa's version of the facts as undisputed for the purpose of summary judgment. *See* Fed. R. Civ. P. 56(e)(2); Civil L. R. 56(a)(1)(A); *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021).

Nelson's failure to respond does not end the matter, however. Federal Rule of Civil Procedure 56 still requires Ursa "'to show that summary judgment [is] proper given the undisputed facts,' with those facts taken as usual in the light most favorable to the nonmovant." *Robinson*, 1 F.4th at 483 (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)). That being said, the Court is not required to do Nelson's job for him. The Court need not "scour the record looking for factual disputes" to support Nelson's claims. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). It is Nelson's responsibility to "present evidence sufficient to establish a triable issue of fact on all essential elements of [each of his claims]." *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 702 (7th Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23). Allegations in his complaint, unsupported by other evidence, are not enough. *See Puckett v. Soo Line R.R. Co.*, 897 F.2d 1423, 1425 (7th Cir. 1990) ("[Plaintiff's] reliance upon the allegations contained in her complaint to create genuine issues of material fact is wholly misplaced."); *United Ass'n of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1263 (7th Cir. 1990) ("[T]he facts alleged in plaintiffs' complaint have little relevance at the summary judgment stage.").

## ANALYSIS

I.  **Ursa Is Entitled to Summary Judgment on All of Nelson's Claims.**

Nelson's amended complaint asserts a number of similar claims under both the FMLA and ADA. Specifically, he asserts claims for FMLA and ADA interference. He also alleges Ursa is liable for failing to accommodate his disability under the ADA. Finally, he asserts three claims related to his termination: FMLA retaliation; ADA retaliation; and ADA adverse action. Ursa seeks summary judgment on each claim. Because Nelson has not provided evidence sufficient for a reasonable trier of fact to find in his favor on any of his claims, Ursa's motion will be granted.

   **A. Nelson's FMLA Interference Claim Fails Because He Has Not Established That Ursa Denied or Interfered with His FMLA Benefits.**

The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided [by the FMLA]." 29 U.S.C. § 2615(a)(1). To establish a claim for interference under the FMLA, Nelson needs to show that (1) he was eligible for FMLA benefits; (2) Ursa was covered by the FMLA; (3) he was entitled to leave under the FMLA; (4) he provided sufficient notice of his intent to take leave; and (5) Ursa denied or interfered with FMLA benefits to which he was entitled. *See Ziccarelli v. Dart*, 35 F.4th 1079, 1084 (7th Cir. 2022). In its motion for summary judgment, Ursa does not dispute that the first four criteria are satisfied. Ursa focuses solely on the fifth element, asserting that Nelson cannot establish that Ursa interfered with any FMLA benefits to which he was entitled. Based on the summary judgment record, the Court agrees.

Nelson's claim is that Ursa did not make the required changes to his work schedule after he submitted the FMLA paperwork and instead required him to continue working more than 40 hours per week. (ECF No. 7 ¶43.) He also alleges that Ursa never informed him of his eligibility for FMLA leave or whether it approved his FMLA leave requests. (*Id.* ¶40.) And he claims he tried to enforce his FMLA rights by requesting a later start time to reduce his working hours, but that Ursa interfered with his attempt by repeatedly calling him into work early and reprimanding him for "being late." (*Id.* ¶¶45–46.)

Ursa's uncontroverted facts defeat these allegations. According to Ursa's evidence, which Nelson has not refuted, Ursa provided him with 48 days of unpaid medical leave following his submission of FMLA paperwork and subsequent requests for time off. (ECF No. 40 ¶¶15–17.) Ursa also reduced his hours to fewer than 40 per week in accordance with the "restriction set forth by his doctor in his FMLA application." (*Id.* ¶22.) Nelson's payroll records confirm these facts.

(ECF No. 40-3.) Because the record shows that Ursa did not deny or interfere with his FMLA benefits, Nelson's unsupported contentions regarding notice and reprimands from his supervisor are irrelevant. Ursa is, therefore, entitled to summary judgment on Nelson's first claim.

### B. Nelson's ADA Interference Claim Similarly Fails Based on the Summary Judgment Record.

To prevail on his ADA interference claim, Nelson must show that (1) he engaged in activity protected by the ADA; (2) he engaged in the exercise or enjoyment of ADA protected rights; (3) Ursa coerced, threatened, intimidated, or interfered with him with regard to his employment on account of his protected activity; and (4) Ursa was motivated by an intent to discriminate. *See Frakes v. Peoria Sch. Dis. No. 150*, 872 F.3d 545, 550–51 (7th Cir. 2017). Nelson alleges that Ursa "repeated[ly] interfered with" his attempts to receive a reasonable accommodation of a later start time. (ECF No. 7 ¶72.) He claims Ursa "repeatedly coerced and threatened" him by calling him into work early and reprimanding him for being late. (*Id.* ¶73.)

Nelson's claim fails because the record does not include any evidence that Ursa took any action that improperly interfered with any of his legitimate employment rights. Nelson does not have a right under the ADA to a start time of his choosing. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 802 (7th Cir. 2005) ("[A]n employer is not required to provide the particular accommodation that an employee requests.") (quoting *Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000)). And, indeed, the record shows Ursa allowed him a later start time in any event. Nelson has also failed to provide evidence that he was "repeatedly coerced and threatened" on account of any protected activity. And finally, Nelson has offered no evidence on any intent by Ursa to discriminate against him based on his having engaged in ADA-protected activity. Accordingly, Nelson has failed to show that there is an issue of material fact as to the third and fourth elements of his ADA interference claim and Ursa is therefore entitled to summary judgment on that claim too.

### C. Nelson Has Not Provided Any Evidence that Ursa Failed to Accommodate His Disability.

To prevail on his ADA failure-to-accommodate claim, Nelson must show that (1) he is a qualified individual with a disability; (2) Ursa was aware of his disability; and (3) Ursa failed to reasonably accommodate his disability. *See Guzman v. Brown County*, 884 F.3d 633, 642 (7th Cir. 2018) (citing *Sears*, 417 F.3d at 797). Nelson alleges that he is a qualifying individual with a disability, that he "requested a reasonable accommodation be made for his disability" on or about

August 9, 2019, and that Ursa initially agreed to the accommodation, but then repeatedly interfered with Nelson's attempts to exercise his accommodation and reprimanded him for doing so. (ECF No. 7 ¶¶53, 56–57.) Nelson's complaint does not specify what accommodation he requested, but in his answers to Ursa's interrogatories Nelson claims he verbally agreed with his supervisor to a delayed start time so that he could "exercise before work." (ECF No. 40-11 at 14.)

The record supports the first two elements of Nelson's failure-to-accommodate claim. Ursa was aware that Nelson was diagnosed with polyneuropathy and diabetic neuropathy that required him to use an accessory knob on the steering wheel to assist him as a truck driver. (ECF No. 40 ¶5.) It was also aware of Nelson's need for a reduced work schedule due to his condition. (*See id.* ¶13.) When viewed in the light most favorable to Nelson, this is sufficient to establish that Nelson was a qualified individual with a disability and Ursa was aware of his disability.

But Nelson's claim fails on the third element; there is no evidence that Ursa failed to reasonably accommodate him. Ursa allowed Nelson to use the required steering knob to assist his driving. (*Id.* ¶37.) It approved 48 days of medical leave. (*See id.* ¶17.) It significantly reduced his work schedule to fewer than 40 hours per week to accommodate his FMLA request. (*Id.* ¶20.) And while Nelson claims he had a verbal agreement to begin work at a later time, he's provided no evidence suggesting that request was not accommodated. The record is that Ursa did so. Moreover, even if it did not, the law did not require Ursa to provide Nelson with the specific start time of his choosing. *See Sears*, 417 F.3d at 802. Ursa was only required to provide Nelson with *reasonable* accommodations for his disability. The record establishes that it did so.

### D. The Record Confirms That Nelson Was Terminated for Disciplinary Reasons Unrelated to His Claims.

"Both the FMLA and the ADA prohibit employers from retaliating against employees who assert their statutory rights." *Freelain v. Village of Oak Park*, 888 F.3d 895, 900 (7th Cir. 2018) (citing 29 U.S.C. § 2615; 42 U.S.C. § 12203). "Retaliation claims under the FMLA and ADA require three familiar elements: (1) the employee engaged in statutorily protected activity; (2) the employer took adverse action against the employee; and (3) the protected activity caused the adverse action." *Id.* at 901 (citing *Pagel v. TIN, Inc.*, 695 F.3d 622, 631 (7th Cir. 2012)). Nelson claims that Ursa terminated his employment in retaliation for Nelson asserting his FMLA and ADA rights.

As an initial matter, the Court will assume for the purposes of this motion that Nelson's requests for accommodation, including his later start time, were activities protected by the FMLA

and ADA.  It is also clear that Ursa's termination of Nelson's employment readily qualifies as an adverse action.  But Ursa is nevertheless entitled to summary judgment on Nelson's retaliation claim because the record establishes that Nelson's termination was caused by disciplinary issues unrelated to his protected activity.

Ursa's briefing adopts a confusing and long-since repudiated distinction between "direct" and "indirect" proof on causation.  The Seventh Circuit explicitly rejected this approach in *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760 (7th Cir. 2016).  The appropriate standard is "simply whether the evidence would permit a reasonable factfinder to conclude that [Nelson's protected activities] caused the discharge."  *See Rowlands v. United Parcel Serv. – Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (quoting *Ortiz*, 834 F.3d at 765).

Based on the evidence of record, a reasonable fact finder could not find that Nelson was fired in retaliation for asserting his FMLA or ADA rights.  The record shows that Ursa gave Nelson a three-day suspension and a written "final warning" on May 15, 2019, for "causing a collision with another trailer when he was backing his truck in the loading area."  (ECF No. 40 ¶¶26–28.)  Then, shortly prior to his dismissal, a female Ursa dispatcher filed three separate complaints against Nelson, alleging that he "used slandering comments against her and another female employee," that he gets "violently angry," and that he made comments to the dispatcher that made her "nervous, scared, and upset" and caused her to cry.  (*Id.* ¶¶29–30; ECF No. 40-6; ECF No. 40-7.)  Despite being given ample time, Nelson has come forward with no evidence that he was fired for other reasons, including for exercising his FMLA or ADA rights.  The mere allegations in his complaint are not enough.  Indeed, even his complaint merely alleges that he was fired shortly after asking his supervisory to certify his request for a later start time in writing.  But the law is well-settled that suspicious timing alone is insufficient to create a jury issue on a retaliation claim.  *See Rowlands*, 901 F.3d at 802.  On the evidence of record, no reasonable fact finder could find that Nelson's termination was a result of his FMLA or ADA-related actions rather than the multiple complaints levied against him by a coworker.

Nelson also alleges he was terminated because of his disability in violation of the ADA (his "adverse action" claim).  But this claim fails for the same reason.  The record establishes that Nelson's termination was due to repeated complaints filed against him by a coworker after he had received a final warning from Ursa.  There is no evidence in the record suggesting that Nelson was terminated because of his disability.

## II. Nelson's Other Motions Are Denied.

On October 5, 2023, Nelson filed a document entitled "Notice of Failure to Properly Filed Plaintiff's Evidence" with the Clerk of Court. (ECF No. 48.) Within the document Nelson captions several pages with "Motion," presumably indicating he intends them to be considered as motions. (*Id.* at 5–9.) Nelson subsequently filed another document on November 21, 2023, also captioned "Motion," in which he states that the previous document "is a Motion in its entirety." (ECF No. 50.)

To the extent either of these documents are appropriately before the Court as motions, they are denied. The contents of the documents are varied and considerably difficult to follow, but Nelson's main contention appears to be that "certain pieces of evidence" he filed with the Clerk's Office were not properly documented. (ECF No. 48 at 1.) But as the Court has explained, Nelson was required to respond to Ursa's motion for summary judgment and accompanying statement of facts and direct the Court to specific evidence in the record to support his claims. He failed to do so. Instead, he haphazardly filed hundreds of pages of documents with the Court, none of which affected the Court's analysis of Ursa's motion for summary judgment.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment under Fed. R. Civ. P. 56, ECF No. 38, is **GRANTED**, and the case is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiff's Notice of Failure to Properly File Plaintiff's Evidence, ECF No. 48, is **DENIED**.

Dated at Milwaukee, Wisconsin on January 23, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge